IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EON CORP. IP HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, ET AL., <br><br> Defendant. | CIV. NO.: 11-1555(FAB/SCC) |

**OPINION AND ORDER**

The parties in this case, unable to agree on a joint protective order, filed competing proposals. *See* Docket Nos. 118, 119. Defendants' proposal included a patent prosecution bar, *see* Docket No. 119; Plaintiff's did not, *see* Docket No. 118. Finding the record insufficient to determine whether such a bar was appropriate, we entered an interim protective order without a prosecution bar and called for additional briefing. *See* Docket No. 142. After reviewing the parties' filings, *see* Docket Nos.

| EON CORP. v. AT&T | Page 2 |
|---|---:|

150, 155, 159-2, we find that a patent prosecution bar is appropriate in this case.

## I. Legal Standard

In *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010), the Federal Circuit[1] for the first time addressed the test that district courts should use in determining whether a patent prosecution bar was proper. It did this in an odd procedural posture. A protective order had previously issued, but its patent prosecution bar exempted the plaintiff's lead counsel. *See id.* at 1376. The defendant then petitioned the Federal Circuit for a writ of mandamus, arguing that the prosecution bar should have covered all of the plaintiff's counsel. *See id.* at 1376–77. Granting the petition for mandamus in part, the Circuit outlined the inquiry that a district court should perform in approving a prosecution bar, as well as in exempting individuals from such a bar. The court's opinion began with a discussion of whether the case presented an "unacceptable risk of inadvertent disclosure" of one of the

---

1. Because this discovery-related issue "implicates an issue of substantive patent law . . . . the matter is governed by Federal Circuit law." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377–78 (Fed. Cir. 2010).

| EON CORP. v. AT&T | Page 3 |
|---|---:|

parties' confidential information, *id.* at 1378–79, and it seemed to treat this as a threshold question. *See id.* at 1380 ("A determination of the risk of inadvertent disclosure or competitive use does not end the inquiry."). The remainder of the opinion is somewhat less clear, at times suggesting that the threshold inquiry is attorney-specific and at times suggesting the opposite.

Most of the courts interpreting *Deutsche Bank*[2] have read it to require a particular two-step inquiry, step one of which requires the moving party tho show, on a counsel-by-counsel basis, that there is an unacceptable risk of inadvertent disclosure of confidential information;[3] at the second step, they

---

2. *See, e.g., NexEdge, LLC v. Freescale Semiconductor, Inc.,* 820 F. Supp. 2d 1040 (D. Ariz. 2011); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 274 F.R.D. 576 (E.D. Va. 2010); *Xerox Corp. v. Google, Inc.,* 270 F.R.D. 182 (D. Del. 2010); *see also, e.g., Ameranth, Inc. v. Pizza Hut, Inc.,* No. 11-1810(JLS/NLS), 2012 WL 528248 (S.D. Cal. Feb. 17, 2012); *AmTab Mfg. Corp. v. SICO Inc.,* No. 11-2692, 2012 WL 195027 (N.D. Ill. Jan. 19, 2012); *Iconfind, Inc. v. Google, Inc.,* No. 11-319(GEB/JFM), 2011 WL 3501348 (E.D. Cal. Aug. 9, 2011); *Kraft Foods Global, Inc. v. Dairilean, Inc.,* No. 10-8006, 2011 WL 1557881 (N.D. Ill. Apr. 25, 2011); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.,* No. 05-4120, 2011 WL 148252 (N.D. Ill. Jan. 18, 2011).

3. The risk of inadvertent disclosure is based on whether counsel is involved in "competitive decisionmaking." *In re Deutsche Bank,* 605 F.3d

EON CORP. v. AT&T                                                               Page 4

balance that risk against the potential harm to the non-movant. *See NexEdge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040, 1043 (D. Ariz. 2010). Where, as here, the movant has given no information whatsoever about the opposing counsel suggesting such an unacceptable risk, courts have tended to reject proposed prosecution bars. *See, e.g.*, *Iconfind, Inc. v. Google, Inc.*, No. 110319(GEB/JFM), 2011 WL 3501348, *5 (E.D. Cal. Aug. 9, 2011) ("Because Google has not met its initial burden of showing that there exists a risk of inadvertent disclosure (i.e., that Iconfind's counsel participate in 'competitive decisionmaking') the court does not find that a prosecution bar is necessary."); *Kraft Foods Global, Inc. v. Dairilean, Inc.*, No. 10-8006, 2011 WL 1557881 (N.D. Ill. Apr. 25, 2011) ("Kraft has not cited any evidence to demonstrate that Dairilean's outside counsel is involved in competitive decisionmaking with respect

---

at 1378. "Competitive decisionmaking" is
   shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984); *see also Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991).

to Dairilean or any of its other clients who might compete with Kraft.").

At least one court, however, has taken a different course. The court in *Applied Signal Technologies, Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. 09-2180(SBA/DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011), though it also followed a two-part inquiry, framed the question somewhat differently. First, it asked whether, "as a threshold matter[,] the proposed prosecution bar 'reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information.'" *Id.* at *2 (quoting *In re Deutsche Bank*, 605 F.3d at 1381). It explained that this threshold inquiry "essentially measures whether a prosecution bar is reasonable" given the information at issue, the scope of activities that would be prohibited and their subject matter, and the duration of the bar. *Id.* At the second step, the *Applied Signal* court measured *this* risk—rather than a risk determined by a counsel-specific competitive decisionmaking inquiry—"against the potential injury to the party deprived of its counsel of choice." *Id.*

The conflict between these two lines of cases is a significant one, concerning, as it does, the movant's burden at the threshold stage: is it necessary that it show, on a counsel-by-counsel

| EON CORP. v. AT&T | Page 6 |
|---|---|

basis, that the opposing counsel engage in competitive decisionmaking?, or is it enough that it show that a general bar would be reasonable in this particular case, shifting the burden to opposing counsel to seek exemptions? For several reasons, we think the *Applied Signal* approach is superior.

First, there is a simple practical problem with what we will call the *NexEdge* approach. The need for of protective orders, and thus patent prosecution bars, typically arises early in patent cases, before confidential information begins to disseminated. *See* PETER S. MENELL, ET AL., PATENT CASE MANAGEMENT JUDICIAL GUIDE 4-6 (2009) ("Protective orders should be entered early in the case."). At this early stage, however, it is unlikely that the proponent of a prosecution bar could have sufficient information about opposing counsel's involvement in competitive decisionmaking to make the threshold showing that *NexEdge* requires.

Moreover, there are several related textual-practical problems that arise from the *NexEdge* approach. *NexEdge* requires that the movant first show that opposing counsel is engaged in competitive decisionmaking. 820 F. Supp. 2d at 1043. This is confusing, though, because *Deutsche Bank*'s discussion of counsel-specific competitive decisionmaking

| EON CORP. v. AT&T | Page 7 |
|---|---:|

comes entirely in the context of proceedings seeking to have attorneys *exempted* from a prosecution bar.[4] *See, e.g.*, *Deutsche Bank*, 605 F.3d at 1380 ("It is therefore important for a court, *in assessing the propriety of an exemption from a patent prosecution bar*, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." (emphasis added)). Indeed, *Deutsche Bank*'s exemption process contains the same inquiry that *NexEdge* says is essential at the "threshold" stage. *Compare Deutsche Bank*, 605 F.3d at 1381 (requiring a party seeking an exemption to show, "on a counsel-by-counsel basis," that each counsel's "representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking"), *with NexEdge*, 820 F. Supp. 2d at 1043 (describing "competitive decisionmaking" in terms of a threshold question). But if that inquiry had been made at the threshold stage, it would not be necessary to repeat it at the exemption stage: if *NexEdge* were right, and a counsel-by-counsel determination were required

---

4. According to *Deutsche Bank*, once the court has determined that a prosecution bar is proper, it is the party seeking an exemption that has the burden to show why it is warranted. *See Deutsche Bank*, 605 F.3d at 1381.

| EON CORP. v. AT&T | Page 8 |
|---|---|

up-front, we fail to see why an exemption procedure would need to exist at all.

In the section of its opinion immediately preceding its conclusion, the *Deutsche Bank* court summarized its holdings. Though language in other sections suggests a *NexEdge*-like rule, in this summary the court essentially provided for a burden-shifting framework. As to whether a patent prosecution bar should be adopted, it held that

> a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of the activities prohibited by the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary information.

605 F.3d at 1381. This is, we think, the only inquiry the court needs to make to impose a general prosecution bar, and it relates only to the reasonableness of the bar itself. The *Deutsche Bank* court went on to hold that a

> party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of

> confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*Id.* Thus, the counsel-specific balancing is done only *after* a court has decided that a prosecution bar is called for, and it must be initiated by the party seeking the exemption. *See id.* (referring to the exemption-seeking party as the "moving party").

The only question before us today is whether a general prosecution bar should be entered in this case. Accordingly, we consider solely whether the proposed bar is reasonable under *Deutsche Bank*. *See id.*; *see also Applied Signal*, 2011 WL 197811, at *2 (describing the reasonableness inquiry).

**II. Analysis**

In assessing whether a prosecution bar is reasonable, we look first at whether "the information that will trigger the bar is relevant to the preparation and prosecution of patents before the PTO." *Deutsche Bank*, 605 F.3d at 1381. Not all confidential or proprietary information is the sort that would "normally be expected to trigger a patent prosecution bar," for example "financial data and other sensitive business information." *Id.* A

prosecution bar might be more reasonable, however, when the triggering information "relate[s] to new inventions and technology under development, especially those that are not already the subject of pending patent applications." *Id.* (noting that this sort of information "may pose a heightened risk of inadvertent disclosure").

Defendants' proposed prosecution bar[5] is triggered by the viewing of documents marked "RESTRICTED CONFIDENTIAL—SOURCE CODE" as well as by technical information marked "CONFIDENTIAL OUTSIDE COUNSEL ONLY." *See* Docket No. 150-2, at 2–3. The interim protective order entered in this case, which was stipulated to by the parties, defines "RESTRICTED CONFIDENTIAL—SOURCE CODE" as documents "containing or substantively relating to confidential, proprietary and/or trade secret source code or technical design documentation." Docket No. 118-1, at 6–7. "CONFIDENTIAL OUTSIDE COUNSEL ONLY," as it relates to

---

5. Plaintiff has also provided its own proposal, *see* Docket No. 150-2, at 4–5, but it does not actually address the subject of inadvertent disclosure, which is the primary concern of patent prosecution bars. We accordingly largely dismiss the proposal, other than its request for a loser-pays provision, and treat Defendants as the movants for the purpose of the following analysis.

technical information, refers to documents containing "information or data relating to future products not yet commercially released and/or strategic plans." *Id.* at 6. We think that both of these categories of information are "relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure."[6] *See Applied Signal*, 2011 WL 197811, at *2.

More problematic, however, is the scope of the subject matter that Defendants wish the prosecution bar to cover. Their proposal calls for a bar on prosecuting patents "relating to the subject matter" of the confidential information triggering the bar as to any particular individual. Docket No. 150-2, at 3. Defendants call this narrow tailoring, *see* Docket No. 150, at 8, but it strikes us as circular and vague. We agree with the *Applied Signal* court that the subject matter of a prosecution bar should be "coextensive with the subject matter of the patents-in-suit," *Applied Signal*, 2011 WL 197811, at *3, and we think that Defendants' proposed language fails by this standard, as it in fact provides no *ex ante* limitation whatsoever and instead allows the bar's subject-matter scope to be defined later by the

---

6. We furthermore disagree with Plaintiff that distinguishing between technical and non-technical confidential information will be particularly onerous, and we accordingly approve of these categories.

information that is ultimately produced during discovery. We find this impermissible and hold instead that the scope of the subject matter covered by the prosecution bar must be limited to the subject matter of the patents-in-suit in this case.

Finally, as to the prosecution bar's duration, we think Defendants' proposal is excessively onerous. We agree with Plaintiff that the bar's duration should not be determined by this case's future life in the courts of appeals. *See* Docket No. 155, at 8 (quoting James Juo & David J. Pitman, *A Prosecution Bar in Patent Litigation Should Be the Exception Rather than the Rule*, 15 VA. J.L. & TECH. 43, 73 (2010) (arguing that patent prosecution bars' durations "should not depend on the length of litigation"—and especially not on the exhaustion of appeals)). Instead, we hold that the duration of the bar should be one year from a final judgment *in this court*.

There are two last issues raised by the parties' briefs. The first concerns whether the prosecution bar should apply, as Defendants' proposal does, to "any individual," including experts and technical advisers. *See* Docket No. 150-2, at 2. Plaintiff argues that the bar, if imposed, should apply only to counsel, but we see no reason why the concerns motivating the prosecution bar—risk of inadvertent disclosure—would not

| | |
|---|---:|
| EON CORP. v. AT&T | Page 13 |

also apply to experts or technical advisers. *See Applied Signal*, 2011 WL 197811, at *5 ("Allowing experts who prosecute patents themselves to access confidential technical information *without* the protection of a prosecution bar thus poses a tremendous risk of inadvertent disclosure."). The "any individual" language may therefore remain. The second issue is Plaintiff's proposal to add a loser-pays provision to the prosecution bar. We can find no other court to have included such a provision in a prosecution bar, and we decline to break new ground on this point.[7]

### III.   Conclusion

For the reasons stated above, we find that a patent prosecution bar is warranted in this case. However, we find Defendants' proposal to be deficient in several respects. Accordingly, the parties are given ten days to jointly file an updated

---

7. The *Applied Signal* court, after it determined that a prosecution bar was reasonable, proceeded to balance the risk of inadvertent disclosure against the potential injury to the non-movant from the restrictions to its choice of counsel. *See Applied Signal*, 2011 WL 197811, *3. It noted, however, that the burden at that stage rested with the non-movant. *Id.* But because Plaintiff has not at this time asked for any exemptions from the bar, we need not conduct the balancing analysis at this time. Of course, any party may hereafter challenge the application of the prosecution bar as to any specific counsel or expert. *Cf. id.* at *5.

| EON CORP. v. AT&T | Page 14 |
|---|---|

protective order containing a patent prosecution bar consistent with this opinion.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 30th day of July, 2012.

        <u>S/ SILVIA CARREÑO-COLL</u>

        UNITED STATES MAGISTRATE JUDGE